# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00237-CV

**State of Texas, Appellant**

**v.**

**Angelique S. Naylor and Sabina Daly, Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
## NO. D-1-FM-09-000050, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

## O P I N I O N

The State appeals from the final divorce decree of appellees Angelique Naylor and Sabina Daly, asserting that section 6.204 of the family code deprives the trial court of subject-matter jurisdiction over the appellees' divorce. *See* Tex. Fam. Code Ann. § 6.204(c) (West 2006) (prohibiting state agency or political subdivision from giving effect to "right or claim to any legal protection, benefit, or responsibility asserted as a result" of same-sex marriage). Because the State is not a party of record and lacks standing to appeal, we dismiss this appeal for want of jurisdiction.

## BACKGROUND

Naylor and Daly were married under Massachusetts law on September 27, 2004. Naylor and Daly then returned to their home in Texas, where they adopted a child, J.D., and started a real estate business together. The couple later separated, and in January 2009, Naylor filed a suit affecting the parent-child relationship ("SAPCR") in Travis County district court, requesting that she

and Daly be named joint managing conservators of J.D. and that she be given the exclusive right to designate J.D.'s primary residence. The parties later settled the SAPCR, and an agreed order was issued. On December 3, 2009, Naylor filed a pro se petition for divorce in the same cause number as the SAPCR, later amending her petition to add, among other things, a request for modification of the parent-child relationship. In response, Daly moved to declare the marriage void under family code section 6.204. *See id.* § 6.204(b) (West 2006) (marriage between persons of same sex is void in Texas); *see also id.* § 6.307 (West 2006) (providing that either party to void marriage "may sue to have the marriage declared void"). In the alternative, Daly requested temporary orders under the family code governing the use of the parties' property and ordering payment of interim attorney's fees. *See id.* § 6.502 (West 2006). The trial court then granted a continuance to allow Naylor to obtain counsel, and issued temporary orders related to the parties' property. Daly subsequently filed a motion to compel and for sanctions, asserting that Naylor had failed to comply with the temporary orders.

On February 9, 2010, the trial court held a hearing on a number of the parties' pending motions related to both the motion to modify the parent-child relationship and the property division. The trial court repeatedly urged the parties to settle as many issues related to the parent-child relationship as possible, emphasizing that it was in the best interest of the child to minimize litigation in that regard. The trial court heard evidence on both the child custody and property division issues, including evidence suggesting that due to the parties' real estate business, the division of property would be a complex process involving multiple corporate entities, a large amount of real property, various creditors, and possibly inadequate accounting. The testimony

2

revealed that the parties had accumulated twelve properties in the course of their business enterprise, in part by borrowing money from family and friends, and that many of these properties were in or near foreclosure. On this basis, Daly sought temporary orders that would allow her to sell certain properties, which would then free up funds to help pay creditors.

The hearing was continued to the next day, at which time the trial court questioned whether it could issue temporary orders if it lacked subject-matter jurisdiction over the parties' divorce. After noting that final resolution of the property division would be substantially delayed by any litigation regarding the validity of the marriage, the trial court again encouraged the parties to settle, stating:

> We have, in summary, a legal mess. And we have two people who have decided, decided, not to do good accounting. . . . So we have an incredibly complex legal problem. We have an incredibly complex factual problem with . . . poor accounting. And we have a situation where we have two people who, if I've ever seen it, have an incentive to try to resolve this.

The trial court then heard additional testimony relevant to the division of property, as well as testimony by Daly's counsel that due to the complexity of the property division and the potential for litigation regarding the validity of the marriage, interim attorney's fees and costs in the amount of $50,000 would be necessary to continue the case through final trial, with another $12,000 in interim fees for the SAPCR. The trial court then repeated its earlier concerns about the parties' property division:

> We're going to break now and resume with you at 2:00 to give you maximum opportunity to resolve some issues. . . . [S]o far, I don't understand your accounting. I don't understand how you ran these businesses. I don't understand how you

3

possibly did tax returns. I don't understand how a CPA could sign a tax return when there's no documentation on loans. I'm really curious about all that. And quite frankly, that can take you into some other sticky wickets . . . . I don't know where this is all headed. . . . And it's only going to get stickier as you continue down this path, which you can choose to do, or you can find a way to extricate yourself. I wish you good luck with that, and I will see you at 2:00.

The parties subsequently came back on the record and announced that they had reached a settlement of all issues in the case.[1] The parties' agreement was then read into the record, and the trial court stated, "The divorce is granted pursuant to the agreement you have recited into the record, and the division of your estate as set forth by your attorneys is approved as a just and right division of your estate." The hearing then concluded. At that time, the State had not yet attempted to intervene in the case, and no party had presented any arguments or filed any pleadings challenging or defending the constitutionality of any provision of the Texas Family Code.

The next day, February 11, 2010, the State filed a petition in intervention, arguing that the trial court lacked jurisdiction to grant the divorce because Naylor and Daly were of the same sex. The State further asserted that the sole vehicle for dissolving the parties' Massachusetts marriage was an action for voidance under section 6.307 of the family code. *Id.* § 6.307. Both Daly and Naylor

---

[1] While the State claims that the parties and the trial court "abruptly and unexpectedly changed course" upon learning that a representative of the attorney general's office was in attendance, abandoning adversarial jurisdictional arguments in favor of a "hurriedly" prepared settlement agreement, this suggestion of impropriety on the part of the trial court is unsupported by the record. Rather, the record reflects that the trial court consistently urged the parties to settle their differences over the course of the two-day hearing, citing the best interest of J.D. and, secondarily, concerns regarding the property division and the parties' accounting practices. In addition, while the trial court raised the jurisdictional issue at the hearing, neither Daly nor Naylor made any substantive argument regarding the trial court's subject-matter jurisdiction to grant a divorce.

4

filed responses seeking to strike the State's petition in intervention.[2] The State also filed a plea to the jurisdiction, reiterating the arguments made in its petition in intervention and seeking to have the suit dismissed for lack of subject-matter jurisdiction.

On March 31, 2010, the trial court held a hearing on Daly's motion for entry of final judgment. At the outset of the hearing, the trial court clarified that the hearing would be limited to Daly's motion for entry of final judgment and the timeliness of the State's intervention, as the parties had not properly set any other matter on the court's docket. After observing that a "trial court can simply not consider the intervention because it's not timely," and that the State could arguably reassert its late-intervention arguments on appeal, the trial court signed the written divorce decree without expressly ruling on the State's petition in intervention or plea to the jurisdiction. The State then filed its notice of appeal.

## DISCUSSION

Because the State's standing to intervene in this case after rendition of judgment implicates this Court's subject-matter jurisdiction, we will first address the timeliness of the intervention. *See M.D. Anderson Cancer Ctr. v. Novak*, 52 S.W.3d 704, 708 (Tex. 2001) ("Standing

---

[2] Specifically, Daly filed an "objection" to the intervention, taking the position that the motion-to-strike procedure described in Texas Rule of Civil Procedure 60 was inapplicable because the State's attempt at intervention was untimely. *See Central Mut. Ins. Co. v. Dunker*, 799 S.W.2d 334, 336 (Tex. App.—Houston [14th Dist.] 1990, writ denied) (holding that rule governing motion-to-strike procedure does not apply to interventions attempted after rendition of judgment (citing Tex. R. Civ. P. 60 ("Any party may intervene by filing a pleading, subject to being stricken out by the court for sufficient cause on the motion of any party."))). Naylor, on the other hand, raised her arguments in opposition to the intervention in a motion to strike.

is a prerequisite to subject-matter jurisdiction, and subject-matter jurisdiction is essential to a court's power to decide a case.").

Generally, an appeal is available only to parties of record, so that non-parties who have not properly intervened in the trial court lack standing to pursue an appeal of the trial court's judgment. *See Gunn v. Cavanaugh*, 391 S.W.2d 723, 724 (Tex. 1965) (stating that remedy by appeal is "available only to parties of record"); *Gore v. Peck*, 191 S.W.3d 927, 928-29 (Tex. App.—Dallas 2006, no pet.) (dismissing appeal for lack of standing because appellant failed to timely intervene); *see also Marino v. Ortiz*, 484 U.S. 301, 304 (1988) (per curiam) ("The rule that only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment, is well settled.").

While the Texas Rules of Civil Procedure do not impose a deadline for intervention, *see* Tex. R. Civ. P. 60, the general rule is that a party may not intervene after final judgment unless the judgment is set aside. *See Texas Mut. Ins. Co. v. Ledbetter*, 251 S.W.3d 31, 36 (Tex. 2008); *First Alief Bank v. White*, 682 S.W.2d 251, 252 (Tex. 1984) ("[A] plea in intervention comes too late if filed after judgment and may not be considered unless and until the judgment has been set aside."). The State's petition in intervention in this case was filed on February 11, one day after the trial court rendered judgment in open court. *See Dunn v. Dunn*, 439 S.W.2d 830, 831-33 (Tex. 1969) (holding that oral rendition of divorce constituted final judgment, despite fact that written judgment had not yet been signed); *Giles v. Giles*, 830 S.W.2d 232, 237 (Tex. App.—Fort Worth 1992, no writ) (holding that judgment was rendered when trial court orally granted divorce in open court); *see also S & A Restaurant Corp. v. Leal*, 892 S.W.2d 855, 857 (Tex. 1995) ("Judgment is rendered when the trial court officially announces its decision in open court or by written memorandum filed with the

6

clerk."); *Greene v. State*, 324 S.W.3d 279, 282 (Tex. App.—Austin 2010, no pet.) (same).[3] Because the State's attempt at intervention occurred after rendition of final judgment, it was untimely. *See Ledbetter*, 251 S.W.3d at 36.

The untimeliness of the State's intervention, however, does not bar the State's appeal if it has standing under the "virtual-representation" doctrine, an exception to the rule that appeal is available only to parties of record. *See In re Lumbermens Mut. Cas. Co.*, 184 S.W.3d 718, 722 (Tex. 2006) ("Because one who is virtually represented is already deemed to be a party, theoretically it is not required to intervene in order to appeal." (citation and internal quotation marks omitted)); *see also Wojcik v. Wesolick*, 97 S.W.3d 335, 342 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (Anderson, J., concurring) (describing doctrine of virtual representation as "an exception to the general rule for appellate standing that only parties of record may exercise the right of appeal" (emphasis omitted)).[4]

---

[3] While the State contends that it "is not clear that the district court rendered a final judgment at the February 10 hearing," the trial court made an express finding on the record at the March 31 hearing on Daly's motion for entry of judgment that "[t]he divorce was granted on February 10th." We give deference to a trial court's determination regarding whether it previously rendered judgment. *See In re Dickerson*, 259 S.W.3d 299, 301 (Tex. App.—Beaumont 2008, pet. denied). The State also argues that the oral granting of the divorce was not final because "both the parties and the court contemplated the preparation of a written order that would be more detailed than what was recited into the record." We disagree. First, the parties agreed on the record at the February 10 hearing that their settlement agreement constituted a "full and complete settlement" of all disputed issues. Neither the parties nor the court indicated that additional claims were left to be resolved by the subsequent written form of judgment. Second, the written form of judgment did not resolve any additional issues between the parties, but merely specified each party's separate property in detail, as opposed to the oral settlement agreement, which provided that each party "owns their sole and separate property that is either in their name title or in their sole and separate possession."

[4] The supreme court has observed that "as a practical matter, one who seeks to invoke the virtual-representation doctrine in order to assert an interest on appeal must take some timely, appropriate action to attain named-party status." *In re Lumbermens Mut. Cas. Co.*, 184 S.W.3d 718,

In order to claim virtual representation, an appellant must show that (1) it is bound by the judgment, (2) its privity of estate, title, or interest appears from the record, and (3) there is an identity of interest between the appellant and a named party to the judgment. *Motor Vehicle Bd. v. El Paso Indep. Auto. Dealers Ass'n*, 1 S.W.3d 108, 110 (Tex. 1999) (per curiam); *Taylor v. Hill*, 249 S.W.3d 618, 623 (Tex. App.—Austin 2008, pet. denied). Even if all three of the virtual-representation requirements are met, however, a party need not be permitted to intervene if the intervention would create "unnecessary delay or prejudice to the existing parties." *Ledbetter*, 251 S.W.3d at 36; *see also Lumbermens*, 184 S.W.3d at 722; *Taylor*, 249 S.W.3d at 623.

To support its contention that it has standing to appeal the divorce decree under the virtual-representation doctrine, the State relies on *Motor Vehicle Board v. El Paso Independent Automobile Dealers Ass'n*. 1 S.W.3d 108. In *El Paso*, the court held that the virtual-representation doctrine allowed the State to intervene on appeal and challenge a trial court's judgment holding provisions of the transportation code unconstitutional and enjoining the enforcement of those provisions. *Id.* at 109. The appellees, an association of used-car dealers, filed suit against local government officials in El Paso, seeking to enjoin them from enforcing certain transportation code provisions, referred to as the "Blue Law," that made it illegal to sell cars on consecutive weekend days. *Id.* at 110. The dealers further sought a declaration that the Blue Law was unconstitutional.

---

722 (Tex. 2006). A motion to intervene on appeal, while untimely under the general rule against post-judgment intervention, has been considered sufficient to invoke the virtual-representation doctrine. *See id.* For this reason, the virtual-representation doctrine is sometimes viewed as an exception to the rule against post-judgment intervention, although it is more accurately characterized as an exception to the rule that appeals are available only to parties of record. *See id.*; *see also Texas Mut. Ins. Co. v. Ledbetter*, 251 S.W.3d 31, 36 (Tex. 2008) (stating that parties "can intervene even after judgment or on appeal" under virtual-representation doctrine).

*Id.* The association did not name the attorney general or any state agency as a party to the suit, but served a copy of its petition on the attorney general, as required for all suits seeking to declare a statute unconstitutional. *Id.*; *see also* Tex. Civ. Prac. & Rem. Code Ann. § 37.006(b) (West 2008) ("[I]f the statute . . . is alleged to be unconstitutional, the attorney general of the state must also be served with a copy of the proceeding and is entitled to be heard."). The attorney general expressly declined to participate in the case, stating in a letter that the local government officials were capable of adequately presenting the constitutional issues to the court. *El Paso*, 1 S.W.3d at 111.

After filing a general denial, however, the local officials came to the conclusion that the Blue Law was, in fact, unconstitutional. *Id.* at 110. The local officials then negotiated a pretrial agreement consistent with their conclusion that the Blue Law was unconstitutional, leading the trial court to render judgment declaring the law unconstitutional and permanently enjoining all officials charged with enforcement of the Blue Law, including the attorney general, from doing so.[5] *Id.* Upon

---

[5] In oral argument in this case, the State took the position that the trial court's judgment in *El Paso* had not been binding on the State. The *El Paso* court of appeals decision, however, quoted the trial court's judgment as permanently enjoining "[a]ll officials authorized by Tex. Trans[p]. Code § 728.004" to enforce the Blue Law from doing so "unless the Texas Supreme Court shall subsequently rule that the statutes are constitutional." *Attorney Gen. v. El Paso Indep. Auto. Dealers Ass'n*, 966 S.W.2d 783, 785 (Tex. App.—El Paso 1998), *rev'd on other grounds*, 1 S.W.3d 108 (Tex. 1999) (per curiam). The court of appeals went on to state:

> Section 728.004 charges the Attorney General . . . with enforcement of [the Blue Law]. Accordingly, the Attorney General is bound by the judgment. The judgment also declares [the Blue Law] unconstitutional. Since the Motor Vehicle Commission Code authorizes the Motor Vehicle Division to deny, revoke, or suspend the license of any person who violates any law relating to the sale or distribution of motor vehicles, the Division also arguably is bound under the judgment from enforcing its authority . . . .

*Id.* The supreme court agreed with the court of appeals on this point. *El Paso*, 1 S.W.3d at 110.

9

learning of the declaratory judgment and permanent injunction, the attorney general and the Motor Vehicle Division of the Texas Department of Transportation (collectively, "the State"), unsuccessfully attempted to intervene post-judgment. *Id.* The State then perfected an appeal, and the association filed a motion to dismiss on the basis that the State was not a party of record in the underlying suit. *Id.* The supreme court determined that the State had standing to intervene under the doctrine of virtual representation, and that the State's right of appeal had not been waived by the attorney general's letter deferring to the local officials' ability to adequately defend the constitutionality of the Blue Law. *Id.* at 110-11. In reaching this conclusion, the supreme court reasoned that "the letter was based on a belief that the statute would be defended by the Local Officials statutorily charged with its enforcement." *Id.* at 111.

In the present case, the State contends that it declined to intervene prior to rendition of judgment because it was relying on Daly to defend the constitutionality of family code section 6.204, just as it relied on the local officials in *El Paso*. According to the State, it was virtually represented by Daly until she abandoned her "defense of the statute." The State argues that under the reasoning of *El Paso*, it is entitled to intervene on appeal in this case in order to defend the family code from constitutional attack. The facts of the present case, however, are distinguishable from *El Paso* in significant ways. The underlying suit in which the State sought to intervene in *El Paso* was a suit directly attacking the constitutionality of the statute. *Id.* at 110. There is no question that the State has an interest in defending its statutes from attack, and that the attorney general is entitled to be heard in a suit challenging the constitutionality of a statute. *See* Tex. Civ. Prac. & Rem. Code Ann. § 37.006(b). This case, on the other hand, is not a suit to declare a statute unconstitutional or enjoin its enforcement, but a private divorce proceeding involving issues of

10

property division and child custody. Neither of the named parties raised any constitutional challenge to any Texas statute or, for that matter, mounted any defense of the constitutionality of any Texas statute. Naylor did not serve the attorney general with a copy of her petition, as she would have been required to do if the constitutionality of a statute had been challenged. *See id.* In fact, the first time the word "constitution" appears in the clerk's record is in the State's petition in intervention, filed after rendition of judgment. The State's claim that Daly abandoned her defense of the statute fails because Daly never defended the statute in the first place. She had no reason to do so, given that no constitutional challenge had been raised. Daly simply sought to declare the marriage void under section 6.204, or in the alternative, to obtain temporary orders governing the use of the parties' property and ordering payment of interim attorney's fees as permitted under the family code. *See* Tex. Fam. Code Ann. § 6.502. A request for relief under a particular statute is not the equivalent of a defense of that statute's constitutionality, especially where no constitutional challenge has been raised. Otherwise, the State would be entitled to intervene in any case in which statutory relief has been requested, in order to "defend" the statute granting such relief from any potential (but as yet unraised) constitutional attack.

The State treats Naylor's petition for divorce as an "implied" constitutional attack on section 6.204 of the family code, reasoning that the trial court could not possibly have granted the divorce without determining that section 6.204 is unconstitutional. *See id.* § 6.204(c) (providing that state agency or political subdivision may not give effect to right or claim to any legal protection, benefit, or responsibility asserted as result of same-sex marriage). We decline to read an implied constitutional challenge into Naylor's petition for divorce where no such challenge has been expressly raised, particularly given the potential for interpreting section 6.204 in a manner that would

allow the trial court to grant a divorce in this case. One could argue, for example, that section 6.204 did not prohibit the trial court's actions because divorce is a "benefit" of state residency, rather than a "legal protection, benefit, or responsibility" resulting from marriage. *See id.* One could also argue that under the plain language of section 6.204, the trial court is only prohibited from taking actions that create, recognize, or give effect to same-sex marriages on a "going-forward" basis, so that the granting of a divorce would be permissible. Naylor has in fact made both of these arguments, either on appeal or in response to the State's post-judgment plea to the jurisdiction. While we express no opinion on the merit of these arguments, the fact remains that there are interpretations of section 6.204 that would allow the trial court to grant the divorce without finding the statute unconstitutional. Furthermore, any such interpretation would have to be entertained before a conclusion of unconstitutionality could be reached. *See City of Houston v. Clark*, 197 S.W.3d 314, 320 (Tex. 2006) ("When faced with multiple constructions of a statute, we must interpret the statutory language in a manner that renders it constitutional if it is possible to do so."). Thus, Naylor's petition for divorce does not, as the State suggests, represent an implied constitutional challenge.

This case is also distinguishable from *El Paso* in that the divorce decree at issue here does not declare any Texas statute unconstitutional, nor does it enjoin the State from enforcing any statute. Unlike *El Paso*, where all state actors charged with enforcing the statute were bound by the trial court's judgment, the only parties bound by the judgment in this case are the parties of record—Daly and Naylor. *See* 1 S.W.3d at 110. While the State argued at the hearing on the motion to enter judgment that future litigants might cite this case in support of the contention that the State waived its ability to defend section 6.204 from constitutional attack, that cannot possibly be the case.

12

A divorce proceeding between two private parties, where no constitutional issues were raised or decided and the State was not a party of record, could not be used to successfully argue that the State has waived its right to intervene in future litigation involving an actual, direct challenge to the constitutionality of section 6.204. Because the State is not bound by the judgment in this case, it cannot meet the first requirement of the virtual-representation doctrine. *See City of San Benito v. Rio Grande Valley Gas Co.*, 109 S.W.3d 750, 755 (Tex. 2003) (holding that "the most important consideration" in virtual-representation doctrine "is whether the appellant is bound by the judgment").

The State also fails to meet the second virtual-representation doctrine requirement because it cannot show that its privity of estate, title, or interest appears from the record. The record does not reflect that the State has any interest in the parties' property division or the terms of their agreement related to child custody. While the State's purported interest is in defending the validity of family code section 6.204, the trial court's judgment did not declare any provision of the family code to be unconstitutional or otherwise invalid. The mere fact that, in the State's view, the trial court's actions were taken in *violation* of section 6.204 does not mean that the trial court's actions *invalidated* section 6.204.[6]

Furthermore, the State cannot show an identity of interest between itself and any named party to the judgment, as required by the third and final element of the virtual-representation doctrine. Daly, upon whom the State claims it relied to protect its interests, did not defend the validity of any Texas statute. She sought only to declare her marriage void under the family code,

---

[6] Whether the trial court actually violated section 6.204 in granting the divorce is a matter on which the State and the parties of record disagree. Because the State lacks standing to appeal, we lack subject-matter jurisdiction to resolve this question.

13

or alternatively, for temporary orders governing the parties' property division and ordering payment of interim attorney's fees. As previously discussed, a request for relief under a statute is not the equivalent of a defense of that statute from hypothetical constitutional attack. Unlike the State, or the local officials in *El Paso*, Daly is not charged with the enforcement or defense of the validity of state law. Thus, we cannot conclude that the State is "so connected in law with a party to the judgment as to have such an identity of interests that the party to the judgment represented the same legal right." *Benson v. Anderson*, 899 S.W.2d 272, 275 (Tex. App.—Houston [14th Dist.] 1995, writ denied) (quoting *Mobil Exploration & Producing U.S. Inc. v. McDonald*, 810 S.W.2d 887, 890 (Tex. App.—Beaumont 1991, writ denied)).[7] Because the State cannot establish the three required elements of the virtual-representation doctrine, it has no standing to appeal as a deemed party of record.

Even if the State had been a deemed party under the virtual-representation doctrine, however, equitable considerations weigh against allowing the State to participate on appeal. *See Lumbermens*, 184 S.W.3d at 722 (holding that non-party is entitled to participate on appeal if requirements of virtual-representation doctrine are met and "equitable considerations do not weigh

---

[7] An argument could be made that Daly shared the State's interest, not in defending the constitutionality of the family code, but in the position, alleged in her pleading seeking to declare the marriage void, that the trial court lacked subject-matter jurisdiction to grant the parties' divorce. *See Lumbermens*, 184 S.W.3d at 724 (holding that identity of interest for purposes of virtual representation existed where party of record and would-be intervenor shared same "ultimate aim" of reversing underlying judgment). Assuming without deciding that the State and Daly shared an identity of interest with respect to subject-matter jurisdiction, the fact remains that the trial court's judgment was not binding on the State as to any issue, jurisdictional or otherwise. As a result, the State was not virtually represented by Daly in the underlying suit. *See City of San Benito v. Rio Grande Valley Gas Co.*, 109 S.W.3d 750, 755 (Tex. 2003) (holding that "the most important consideration" in virtual-representation doctrine "is whether the appellant is bound by the judgment").

against allowing [the non-party] to participate on appeal"); *see also id.* at 729 ("[W]hether a would-be intervenor is entitled to appeal under the virtual-representation doctrine is an equitable determination that must be decided on a case-by-case basis."). By entering into the agreed judgment in this case, Naylor and Daly were able to settle a protracted and complex property dispute involving numerous business entities, a substantial amount of real property, and multiple creditors, one of whom testified that she had substantially depleted her life savings to loan money to the couple's fledgling business enterprise. Naylor and Daly were also able to settle their differences with respect to the motion to modify the parent-child relationship, incorporating a 50-page agreed order governing child custody into the divorce decree and further agreeing to an order on co-parenting counseling. To allow the State to intervene at this stage of the proceedings would greatly prejudice not only the existing parties and their creditors, but the child whose custody situation remains unsettled while this litigation continues. The State, on the other hand, is not prejudiced in any way if it is unable to intervene on appeal, as it is in no way bound by the trial court's judgment or otherwise prevented from defending any state statute from constitutional attack.

As the foregoing discussion demonstrates, the State does not meet any of the required elements of the virtual-representation doctrine in order to be deemed a party of record in this case, and equitable considerations weigh against allowing the State to intervene on appeal. Because the State has not properly intervened and cannot be considered a deemed party of record under the virtual-representation doctrine, it lacks standing to appeal.[8] *See Gunn*, 391 S.W.2d at 724. This

---

[8] Had the State attempted to intervene prior to the rendition of judgment, the trial court's decision on whether to grant a party's motion to strike would have been reviewed for an abuse of discretion. *See Guaranty Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex. 1990) ("[T]he trial court has broad discretion in determining whether an intervention should be stricken . . . ."). We express no opinion on the State's ability to intervene under those circumstances.

15

Court cannot exercise subject-matter jurisdiction over an appeal in which the sole appellant lacks standing.[9]  *See Novak*, 52 S.W.3d at 708 ("Standing is a prerequisite to subject-matter jurisdiction . . . .").

## CONCLUSION

Because the State lacks standing to appeal, we dismiss this appeal for want of jurisdiction.

_____

Diane M. Henson, Justice

Before Chief Justice Jones, Justices Puryear and Henson

Dismissed for Want of Jurisdiction

Filed:  January 7, 2011

_____

We also note that the procedural posture of this case, particularly with respect to the State's intervention, differs from that of *In re J.B.*, ___ S.W.3d ___, No. 05-09-01170-CV, 2010 Tex. App. LEXIS 7127 (Tex. App.—Dallas Aug. 31, 2010, no pet. h.).  In that case, the court of appeals held that the trial court abused its discretion in striking the State's timely intervention where no party had filed a motion to strike.  *Id.* at *6 ("The court abuses its discretion by striking an intervention in the absence of a motion to strike."); *see also id.* at *7 ("Lack of a justiciable interest to intervene must be raised by a motion to strike or the defense is waived.").  *But see Dunker*, 799 S.W.2d at 336 (holding that rule governing motion-to-strike procedure does not apply to interventions attempted after rendition of judgment (citing Tex. R. Civ. P. 60)).

[9] Having determined that we lack subject-matter jurisdiction over this appeal, we express no opinion on the remaining issues raised by the State.

16