# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-21-00556-CV

**Nathanael Brown, Appellant**

**v.**

**Jessica Freed and Samuel Freed, Appellees**

### FROM COUNTY COURT AT LAW NO. 2 OF TRAVIS COUNTY
### NO. C-1-CV-19-009322, THE HONORABLE TODD WONG, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

We withdraw our opinion and judgment dated August 1, 2023, and substitute the following in place of the earlier opinion. The motion for rehearing filed by appellant Nathanael Brown is overruled.

Jessica Freed and Samuel Freed sued their former landlords, Marc and Karen Greenberg, alleging that they had acted in bad faith in withholding a portion of their security deposit. *See* Tex. Prop. Code § 92.109 (liability of landlord for retaining security deposit). After the conclusion of a bench trial, but before the trial court signed a final judgment, Brown (the Greenbergs' property manager) filed what he designated as a "Motion for Joinder . . . and New Trial." He later filed an Amended Motion. After the trial court signed a final judgment in favor of the Freeds and denied Brown's motion, Brown filed a notice of appeal.

In nine issues, Brown challenges the trial court's judgment against the Greenbergs and the trial court's order denying his "Amended Motion for Joinder . . . and New Trial." We conclude that Brown has failed to demonstrate that he has standing under the virtual-representation doctrine to challenge the judgment against the Greenbergs and that the trial court did not abuse its discretion in denying his post-trial attempt to intervene. Accordingly, we dismiss this appeal in part and affirm the trial court's judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

In December 2015, the Freeds entered into an agreement to lease residential property in Austin owned by the Greenbergs. As required by the lease, the Freeds paid $2,095 as a security deposit. Ironrock Properties, a property management company, was the Greenbergs' corporate agent in negotiating the lease and in managing the property. Brown, a broker's associate with Ironrock, was the property manager during the lease.

In August 2018, the Freeds gave written notice to Ironrock that they did not intend to renew the lease when it expired on September 30, 2018. The Freeds also provided Ironrock with a forwarding address for the purpose of returning their security deposit. In response, Ironrock asked the Freeds to notify its staff if they decided to vacate the property earlier than September 30 so that the property manager could begin the "move out inspection and process [their] security deposit." On September 18, the Freeds vacated the property and provided written notice of the surrender, as requested. Forty-three days later, on October 30, Brown sent the Freeds a check in the amount of $514.62, representing a partial return of their security deposit, along with an itemization of charges taken against the withheld portion.

2

The Freeds later filed suit, alleging that the Greenbergs acted in bad faith in failing to return their full security deposit and in failing to timely return the deposit or provide an itemization of deductions.[1]  *See id.* §§ 92.103 (generally obligating landlord to refund security deposit to tenant within 30 days after tenant surrenders premises), 92.109(a), (b), (d) (liability of landlord who in bad faith retains security deposit or fails to provide an itemization of deductions; bad faith is presumed when landlord fails to return security deposit or provide itemization of deductions within 30 days after tenant surrenders possession).  At the trial, conducted on August 10, 2021, the Greenbergs called Brown as their only fact witness.  In part, Brown testified about his decision to deduct certain charges from the security deposit for what he asserted were damages to the property.  *See id.* § 92.109(c) (landlord has burden of proving that retention of any portion of security deposit was reasonable).  As to the Freeds' allegation that the itemization of deductions was untimely, Brown testified that he could not have provided the itemization earlier because he was waiting to receive the final utility bill for the property.  At the conclusion of the trial, the court announced that it would take the case under advisement.  Later that day, the judge's staff attorney notified the parties that the judge intended to rule in favor of the Freeds.

Two days later, on August 12, Brown filed a "Motion for Joinder of Persons Needed for Just Adjudication and New Trial," effectively seeking to intervene in the suit.[2]  The Freeds

---

[1]  The Freeds originally filed their suit in justice court.  After the justice court signed a judgment in favor of the Freeds, the Greenbergs appealed to the county court at law, which conducted a trial de novo and signed the judgment from which Brown now seeks to appeal.

[2]  Although Brown styled his pleading in the trial court as a "motion for joinder," the term "joinder" generally refers to the addition of parties to a lawsuit by those who are already in the suit.  *See In re Union Carbide Corp.*, 273 S.W.3d 152, 155–56 (Tex. 2008) (orig. proceeding) (explaining that joinder and intervention are distinct and that "[p]ermissive joinder relates to

3

responded by objecting in writing to Brown's attempt to intervene post-trial and moving the court to render a final judgment.[3] On August 30, 2021, the court signed a final judgment awarding the Freeds $5,330.26 in actual damages and $15,199.00 in attorney's fees.

On October 11, 2021, the trial court conducted a hearing on Brown's "motion for joinder," at which Brown appeared and represented himself pro se. The trial court signed an order overruling Brown's motion on October 12.

Brown later filed a notice of appeal and raises nine issues in his Appellant's Brief. In four issues, he challenges the trial court's final judgment against the Greenbergs and, in two related issues, contends he has standing to bring this challenge even though he is not a party to the judgment. In the remaining three issues, Brown challenges the trial court's decision not to allow him to intervene.

## DISCUSSION

### *Brown's Standing to Challenge the Judgment*

As a preliminary matter, we first consider Brown's assertion that this Court has subject-matter jurisdiction to consider his challenges to the merits of the trial court's final judgment resolving the suit between the Freeds and the Greenbergs.

---

'proper parties to an action who may have been joined or omitted at the pleader's election'"). In contrast, "intervention" generally refers to an attempt by a nonparty to insert himself into a lawsuit. *See id.* at 156 (noting that "interventions by uninvited participants have potential for disrupting pending suits"). We construe Brown's motion as effectuating an intervention. *See* Tex. R. Civ. P. 60 ("Any party may intervene by filing a pleading, subject to being stricken out by the court for sufficient cause on the motion of any party.").

[3] We construe the Freeds' pleading as a motion to strike Brown's intervention.

4

Standing is a component of subject-matter jurisdiction. *State v. Naylor*, 466 S.W.3d 783, 787 (Tex. 2015). Generally, only parties of record have standing to appeal a trial court's judgment. *In re Lumbermens Mut. Cas. Co.*, 184 S.W.3d 718, 723 (Tex. 2006) (orig. proceeding); *see* Tex. R. App. P. 25.1(c) (providing that "party who seeks to alter the trial court's judgment" must file notice of appeal). Here, Brown attempted to intervene in the Freeds' suit after trial but before the trial court signed the final judgment, but the court did not allow him to do so. Consequently, Brown is not a party of record to the judgment against the Greenbergs. *See Kenneth D. Eichner, P.C. v. Dominguez*, No. 14-18-00399-CV, 2022 WL 364070 at *7 (Tex. App.— Houston [14th Dist.] Feb. 8, 2022, pet. denied) (mem. op.) (concluding that appellant whose pre-judgment intervention was struck was not party to judgment it sought to appeal).

Although Brown was not a party of record after his intervention was struck, he asserts that he is nevertheless entitled to appeal the trial court's judgment under the equitable doctrine of virtual representation. *See Naylor*, 466 S.W.3d at 789 ("Although the right to appeal is generally limited to parties of record, a third party may file an appeal where the prospective appellant is 'deemed to be party' under the doctrine of virtual representation."). The virtual-representation doctrine provides an exception to the general rule that only parties of record may appeal. *Id.* To "intervene" on appeal as a deemed party under the virtual-representation doctrine, the nonparty must establish that (1) he is bound by the judgment; (2) he is in privity of estate, title, or interest with a party, which privity appears from the record; and (3) there is an identity of interest between him and a party to the judgment.[4] *In re Lumbermens*, 184 S.W.3d at

---

[4] Even when these requirements of the doctrine are met, an appellate court must also evaluate whether other equitable considerations weigh against allowing the nonparty to intervene on appeal, such as unnecessary delay and prejudice to existing parties. *See In re Lumbermens Mut. Cas.Co.*, 184 S.W.3d 718, 726 (Tex. 2006) (orig. proceeding).

722. In determining whether a nonparty is a deemed party who may appeal by virtual representation, "the most important consideration is whether the appellant is bound by the judgment." *City of San Benito v. Rio Grande Valley Gas Co.*, 109 S.W.3d 750, 755 (Tex. 2003).

Brown contends he is bound by the judgment in this case because, as the Greenbergs' agent in the transactions that are the subject of the Freeds' suit, he is potentially liable to the Greenbergs to the extent they were found liable to the Freeds. Brown's argument is that the Greenbergs may later sue him and Ironrock for negligence, breach of fiduciary duty, and violations of the Texas Real Estate Licensing Act, and that as a consequence of the judgment in this case he would be precluded from asserting that his actions in returning the Freeds' security deposit complied with terms of the lease and with Chapter 92 of the Property Code.

Brown's argument that he is or could be bound by the judgment below implicates the doctrine of collateral estoppel, also known as issue preclusion. The doctrine prevents the re-litigation of particular issues already resolved in a prior suit, *Barr v. Resolution Tr. Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 628 (Tex. 1992), and is designed to promote judicial efficiency, protect parties from multiple lawsuits, and prevent inconsistent judgments, *Sysco Food Servs. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994). To invoke collateral estoppel, a party must establish that "(1) the facts sought to be litigated in the second action were fully and fairly litigated in a first action, (2) those facts were essential to the judgment in the first action, and (3) the parties were cast as adversaries in the first action." *In re USAA Gen. Indem. Co.*, 629 S.W.3d 878, 883 (Tex. 2021) (quoting *Sysco Food Servs.*, 890 S.W.2d at 801).

For two independent reasons, we conclude that Brown has not established that he would, in a hypothetical future suit brought against him by the Greenbergs, be bound by the judgment in this case.

6

### *(1) Brown and the Greenbergs were not "cast as adversaries" in this suit.*

As noted above, one of the essential elements for the use of collateral estoppel is that the party seeking to invoke the doctrine and the party against whom it is sought to be applied must have been "cast as adversaries in the first action," at least as to the issue in question. Section 27 of the Restatement (Second) of Judgments states:

> When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.

Restatement (Second) of Judgments § 27 (Am. L. Inst. 1982). Comment *a* to section 27 states that "[t]he rule of issue preclusion is operative where the second action is between the same persons who were parties to the prior action, *and who were adversaries (see § 38) with respect to the particular issue . . . .*" *Id.* at § 27 cmt. *a* (emphasis added).

Section 38 of the Restatement gives further guidance as to the meaning and significance of the term "adversaries" as it relates to issue preclusion:

> Parties who are not adversaries to each other under the pleadings in an action involving them and a third party are bound by and entitled to the benefits of issue preclusion with respect to issues they actually litigate fully and fairly *as adversaries to each other* and which are essential to the judgment rendered.

*Id.* § 38 (Am. L. Inst. 1982) (emphasis added). Comment *a* to section 38 explains:

> *Scope and rationale.* The concept of adversarial litigation is that determination of issues is not full and fair unless a party has an opportunity to present proofs and argument specifically directed to the matters in controversy. *This opportunity necessarily exists when parties are properly aligned on opposite sides of litigation. It also exists where the claims or defenses in the pleadings put parties in an adversarial relation to each other* even though they may also be aligned together against a third party.

7

*Id.* at cmt. *a* (emphasis added).

Brown apparently reasons that, as the Greenbergs' property manager, he was in privity with them in the Freeds' suit and, as a result, the Greenbergs could use collateral estoppel offensively against him in a later suit to establish his liability to them. *See Sysco*, 890 S.W.2d at 802 (explaining that collateral estoppel may be invoked when "the party against whom the doctrine is asserted was a party or in privity with a party in the first action"). But privity is relevant to an assertion of collateral estoppel only if the parties were adversaries in the prior action on the issue in question. That is, collateral estoppel applies when the party against whom collateral estoppel is asserted was, in the prior action, cast as an adversary against the party now asserting collateral estoppel or was in privity with a party that was cast as an adversary against the party now asserting collateral estoppel. Here, the absence of an adversarial posture between Brown and the Greenbergs as to the relevant issue makes the question of Brown's privity immaterial.

In the present case, Brown has not established that he and the Greenbergs were adversaries in the trial, either as parties or through privity. As a result, he has not established that the Greenbergs would be able to invoke collateral estoppel against him in a future suit. Because Brown has not established that he is "bound by the judgment" below, he cannot use the virtual-representation doctrine to prosecute this appeal.

### *(2) Brown has not established that an attempted offensive use of collateral estoppel by the Greenbergs would be allowed.*

Collateral estoppel may be used offensively or defensively. *Case Funding Network, L.P. v. Angelo-Dutch Petroleum Int'l, Inc.*, 264 S.W.3d 38, 57 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *Yarbrough's Dirt Pit, Inc. v. Turner*, 65 S.W.3d 210, 216 (Tex. App.—Beaumont 2001, no pet.); *see also Tankersley v. Durish*, 855 S.W.2d 241, 245 (Tex. App.—Austin

1993, writ denied) (noting that case involved "offensive use of collateral estoppel"). Defensive collateral estoppel is used by a defendant to prevent re-litigation by a plaintiff of issues previously lost against another defendant. *Johnston v. American Med. Int'l*, 36 S.W.3d 572 (Tex. App.—Tyler 2000, pet. denied). In contrast, offensive collateral estoppel is used by a plaintiff to prevent a defendant from relitigating an issue that the defendant previously litigated and lost in a suit involving another party. *Case Funding Network*, 264 S.W.3d at 57; *Scurlock Oil Co. v. Smithwick*, 724 S.W.2d 1, 5–7 (Tex. 1986).

Brown asserts that in this suit by the Freeds he was in privity with the Greenbergs as their property manager and agent and that in a subsequent suit the Greenbergs may use collateral estoppel offensively to attempt to establish his liability to them. But even if the elements of collateral estoppel, including privity, would otherwise be satisfied in any future suit brought by the Greenbergs against Brown, Brown has not established that an offensive use of collateral estoppel would apply in such a subsequent suit.

Offensive use of collateral estoppel does not promote judicial economy in the same manner that defensive use does. *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 329 (1979). Defensive use of collateral estoppel precludes a plaintiff from relitigating identical issues and gives a plaintiff a strong incentive to join all potential defendants in the first action if possible. *Id.* at 329–30. On the other hand, offensive use of collateral estoppel "creates precisely the opposite incentive" and gives a plaintiff an incentive to adopt a "wait and see" approach, in the hope that the first action will result in a favorable judgment. *Id.* at 330. For this reason, the U.S. Supreme Court in *Parklane Hosiery* recognized that a trial court may decline to apply offensive collateral estoppel, even in cases where the traditional elements of collateral estoppel are satisfied. *Id.* at 330. While a trial court is given broad discretion to apply collateral estoppel offensively without

9

strict mutuality of parties, the general rule is that "in cases where a plaintiff could easily have joined in the earlier action or where . . . the application of offensive estoppel would be unfair to a defendant, a trial judge should not allow the use of offensive collateral estoppel." *Id.* at 331; *Scurlock Oil*, 724 S.W.2d at 5–7 (noting that Texas courts should consider "fairness factors as outlined in *Parklane Hosiery*" in determining applicability of offensive use of collateral estoppel); *see also Richard v. Ayala*, No. 01-14-00354-CV, 2015 WL 6931497 at *6 (Tex. App.—Houston [1st Dist.] Nov. 10, 2015, no pet.) (mem. op.) (concluding trial court did not abuse its discretion in refusing to allow offensive use of collateral estoppel because it would be unfair under facts presented (citing *Parklane Hosiery*, 439 U.S. at 331)).

In the proceedings underlying this appeal, the Freeds' claims against the Greenbergs were based on transactions conducted by Brown as their property manager. Under Rule 38 of the Texas Rules of Civil Procedure, the Greenbergs could have added Brown as a third-party defendant and pursued their claims against him as third-party plaintiffs, but they did not. *See* Tex. R. Civ. P. 38(a) (providing that defendant may bring in third-party defendant "who is or who may be liable to him or to the plaintiff for all or part of the plaintiff's claim against him"). Thus, in the absence of countervailing circumstances not apparent from the record before us, in order to establish Brown's liability in a subsequent suit, the Greenbergs would have to independently show that Brown wrongfully withheld the Freeds' security deposit.

On the present record, we cannot conclude that Brown has established that he is bound by the judgment he seeks to appeal. Consequently, he cannot satisfy the first part of the three-part test for virtual representation. *See In re Lumbermens*, 184 S.W.3d at 722. Because he is not a party of record and has not established that he is entitled to intervene under the doctrine of virtual representation, Brown lacks standing to appeal the merits of the Freeds' judgment against

10

the Greenbergs. *See State v. Naylor*, 330 S.W.3d 434, 444 (Tex. App.—Austin 2011), *aff'd*, 466 S.W.3d 783 (Tex. 2015) (dismissing appeal for want of jurisdiction because nonparty could not be considered deemed party by virtual representation). We overrule Brown's first and second issues, asserting that he is a deemed party by virtual representation. We therefore lack jurisdiction to consider issues five, six, seven, and eight, in which Brown challenges the merits of the trial court's judgment.

### *Denial of Brown's Motion to Join and for a New Trial*

Although Brown lacks standing to challenge the merits of the trial court's judgment against the Greenbergs, we may consider his complaint that the trial court abused its discretion in denying his post-trial attempt to intervene and request for a new trial. *See Kenneth D. Eichner, P.C.*, 2022 WL 364070 at *7 (noting that issue of whether appellant was "a party" for purpose of perfecting appeal of trial court's decision to strike intervention, which merged into final judgment, was separate from whether appellant has standing to challenge judgment under virtual-representation doctrine); *Smith v. City of Garland*, 523 S.W.3d 234, 239 (Tex. App.—Dallas 2017, no pet.) ("After final judgment, an unsuccessful intervenor may complain on appeal of the striking of his intervention plea.").

A party with a justiciable interest in a pending lawsuit may intervene as a matter of right. *Nghiem v. Sajib*, 567 S.W.3d 718, 721 (Tex. 2019). Rule 60 of the Texas Rules of Civil Procedure provides that "[a]ny party may intervene by filing a pleading, subject to being stricken out by the court for sufficient cause on the motion of any party." Tex. R. Civ. P. 60. When a motion to strike is filed, the burden shifts to the intervenor to show a justiciable interest in the lawsuit, which may be legal or equitable in nature. *Mendez v. Brewer*, 626 S.W.2d 498, 499 (Tex.

11

1982). An intervenor has a justiciable interest in a lawsuit when his interest will be affected by the litigation. *In re Estate of Webb*, 266 S.W.3d 544, 548 (Tex. App.—Fort Worth 2008, pet. denied).

Even if a justiciable interest exists, however, the trial court still has broad discretion to determine whether the plea in intervention should be struck. *Farmers Grp., Inc. v. Geter*, 620 S.W.3d 702, 713 (Tex. 2021). A trial court abuses its discretion in striking a petition to intervene if (1) the intervenor could have brought the same action, or any part thereof, in his own name (or if the action had been filed against the intervenor, all or part of the recovery could have been defeated by the intervenor); (2) the intervention will not complicate the case by an excessive multiplication of the issues; and (3) the intervention is almost essential to protect the intervenor's interest. *Guarantee Fed. Sav. Bank v. Horseshoe Oper. Co.*, 793 S.W.2d 652, 657 (Tex. 1990). Because a trial court has broad discretion in determining whether to strike an intervention, a significant delay in filing a petition in intervention may also qualify as "sufficient cause" to strike an intervention. *Muller v. Stewart Title Guar. Co.*, 525 S.W.3d 859, 874 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (explaining that petition in intervention may be considered "untimely," even if before final judgment, when "filed so late that it would delay the proceeding or unjustifiably complicate it").

On appeal, Brown argues that the trial court abused its discretion in denying his motion to join in the suit because, in his view, he established that his "joinder" was necessary under Rule 39 of the Rules of Civil Procedure. *See* Tex. R. Civ. P. 39 ("Joinder of Persons Needed for Just Adjudication"). Construing his argument liberally, Brown asserts that the record shows he has an interest relating to the subject matter of the lawsuit and that his participation in the suit is necessary to protect that interest. *See id.* According to Brown, he "may be impaired or impeded

12

to protect his interest as the Greenbergs' agent who is liable for his actions under common law principles of the agent-principal relationship, duties and obligations provided by the Texas Real Estate Licensing Act and the Texas Real Estate Commission's rules and regulations, and contractually liable under his property management agreement with the Greenbergs."

Brown's argument as to his justiciable interest (like his virtual-representation argument) assumes that he will be estopped from defending his actions in a subsequent suit against him by the Greenbergs. As we previously discussed, however, Brown's assumption that he is "bound by the judgment" is not correct. Moreover, Brown testified at trial about the transaction that is the basis of his potential liability, and he does not explain what defenses, if any, he would have asserted to "protect his interest" had the trial court permitted his intervention and ordered a new trial. In short, we cannot conclude that the trial court's decision to deny Brown's motion for joinder, which was filed after trial and more than twenty-eight months after the Freeds initiated suit against the Greenbergs, and to effectively strike his intervention constituted an abuse of discretion. We overrule issues three, four, and nine.

### *Motion for Rehearing*

In his motion for rehearing, Brown argues that the trial court erred in failing to rule on his motion to intervene until after it rendered a final judgment. Liberally construed, Brown's argument is that when he intervened by filing his Motion for Joinder, he became a party for all purposes and that after the trial court signed the final judgment on August 30, 2021, it had no power to strike his intervention by denying his Amended Motion. *See In re Southwestern Bell Tel. Co.*, 35 S.W.3d 602, 605 (Tex. 2000) (orig. proceeding) (holding that order was void because it was signed after trial court's plenary power had expired).

13

We do not disagree that Brown became a party when he intervened in the lawsuit by filing his Motion for Joinder." *See* Tex. R. Civ. P. 60 ("Any party may intervene by filing a pleading, subject to being stricken out by the court for sufficient cause on the motion of any party."); *Abdullatif v. Erpile, LL*, 460 S.W.3d 685, 694 n.9 (Tex. App.—Houston [14th Dist.] 2015, no pet.) ("Absent a motion to strike, one who files a petition in intervention generally becomes a party to the suit for all purposes."). Nor do we disagree that although Brown was not named in the August 30 judgment, it constituted a final judgment for purposes of appeal because it followed a conventional trial on the merits and contained a Mother Hubbard clause and a recitation that "[t]his is a final and appealable judgment." *See Vaughn v. Drennon*, 324 S.W.3d 560, 563 (Tex. 2010) (explaining that there is "a presumption of finality for judgments that follow a conventional trial on the merits" and that "[a] judgment need not address every party and claim for it to be a final judgment for purposes of appeal").

Nevertheless, contrary to Brown's assertion, we cannot conclude that the trial court lacked the power to strike Brown's intervention in the lawsuit. Because the record shows that the Greenbergs timely filed a motion for new trial, the trial court retained its plenary power to "vacate, modify, correct, or reform" the final judgment until December 13, 2021. *See* Tex. R. Civ. P. 329b (d), (e) (trial court retains plenary jurisdiction for 30 days after signing of judgment or if "a motion for new trial is filed by any party, the trial court . . . has plenary jurisdiction . . . until thirty days after all such motions are overruled, either by a written and signed order or by operation of law"). Therefore, the trial court acted within its plenary power when, on October 12, 2021, it denied Brown's motion and struck his intervention, dismissing him from the suit.

Brown also argues in his motion for rehearing that he was denied due process because after his intervention he did not receive notice of some pleadings or proceedings relating

to the trial court's rendition of judgment on the merits as to the issues between the Freeds and the Greenbergs.

A post-trial chronology of events helps sort out Brown's due-process complaint. The trial was held on August 10, 2021. That afternoon, the trial court's staff attorney notified the parties that the judge intended to grant judgment for the Freeds. Two days later, August 12, Brown filed his "Motion for Joinder . . . and New Trial." In it, Brown argued that he had "an interest relating to the subject of the action of this case by way of his agency relationship with Greenberg and resulting liability." He sought a new trial to allow him "a first [sic] opportunity to respond." This argument encapsulates Brown's assertion that he was a necessary party to the case because of his (incorrect) belief that he would be bound by the court's judgment and thus automatically subject to liability to the Freeds.

Later in the day on August 12, the Freeds filed a Motion to Render Final Judgment. That motion referenced Brown's Motion for Joinder but apparently was not served on Brown, presumably because the Freeds' attorney did not consider Brown to be a party to the case at that time. Nonetheless, it is obvious that Brown quickly became aware of the Freeds' motion, because later that same day Brown sent an email to the Freeds' attorney in which he complained of his failure to be served with the Freeds' motion:

> As you are aware, I filed a motion for required joinder and new trial. Until that motion is considered you have good reason to know that I should be a notified party in this case. Cease and desist from filing any additional motions concern [sic] this case and withdraw your current motion until my motion has been heard. You have until 7pm CST to withdraw your motion before I file an emergency restraining order against you and your firm.

The Freeds' attorney forwarded Brown's email to the trial court's staff attorney, and it is now part of the appellate record.

15

Four days after that, on August 16, Brown filed an "Amended Motion for Joinder . . . and New Trial." That motion included a section titled "Due Process Requires a New Trial Be Granted" in which Brown asserts that

> Freed cannot argue he afforded Brown an opportunity to present objections when Freed does not join Brown in the action. Instead, Freed attempted to abuse the use of process by litigating this cause against Brown through Greenberg, without Brown.
>
> Therefore, this Court has good cause on the basis that due process requires a new trial.

As stated, this argument appears to be simply another way of asserting that Brown should be made a party to the case and treated as such.

As discussed above, we have considered Brown's original Motion for Joinder as a plea in intervention. Before he filed that motion, Brown was not a party to the suit and was not entitled to be given notice of filed pleadings. Brown's Amended Motion for Joinder was filed four days after his original motion. At that time, the only pleading he had not been served with (after he filed his original Motion for Joinder) was the Freeds' Motion for Entry of Final Judgment. Brown's Amended Motion for Joinder does not specifically reference the Freeds' motion but instead appears to raise a general complaint about his needing to be made a party.

The trial court did not sign a final judgment until two weeks after Brown's Amended Motion was filed. Although Brown was apparently not notified of the signing of the judgment, he also became aware of that action, because on October 11 he personally appeared at and participated in an oral hearing on his Amended Motion. At that hearing, Brown argued that the trial court should not have signed the judgment without making him a party to the suit:

> First, I ask that the judgment that postdates my Motion for Required Joiner [sic] be vacated.  Second, the Freeds be required to amend their pleadings or the case be dismissed (inaudible) to join all required parties.

Brown did not specifically assert a due-process argument at the hearing.

On appeal, Brown's due process argument encompasses two complaints:  first, that he was not given notice of the Freeds' Motion for Entry of Judgment and therefore did not have an opportunity to object to the rendition of judgment; and second, that he did not receive notice of the trial court's signing of the judgment.  His Appellant's Brief states:

> Brown was not given a meaningful opportunity to be heard because he was not given notice to which he could have responded.  Independently, Brown was not heard at a meaningful time and in a meaningful manner because the court took actions that affected his interests, such as rendering judgment before hearing his motion for joinder.

> Therefore, the trial court violated Brown's due process rights by continuing to rule in this case without giving Brown notice of the rulings or an opportunity to be heard before ruling.

As to the foregoing complaints, as discussed above, Brown became aware of the Freeds' motion the same day it was filed, sent an email complaining about it that day, and shortly thereafter filed his Amended Motion for Joinder in which he expressly complained that he should be made a party to the suit.  His Amended Motion also set forth his asserted grounds for why the judgment should not be rendered.  Thus, Brown took advantage of the opportunity to assert his objections to the rendition of judgment before it was signed.  As to the signing of the judgment without his knowledge, Brown personally attended and participated in an oral hearing on his Amended Motion held by the trial court on October 11.

17

Accordingly, Brown was not denied due process in any meaningful way. In any event, even if it can be said that Brown suffered a temporary denial of due process, any such denial was wholly cured by his filing (before the judgment was signed) his Amended Motion for Joinder and by his participation (after the judgment was signed) in the trial court's later hearing on that motion. *See, e.g.*, *Saenz v. Springer*, No. 14-21-00137-CV, 2022 WL 120894, at *4 (Tex. App.—Houston [14th Dist.] Jan. 13, 2022, no pet.) (mem. op.) ("Any due process violation caused by the trial court's failure to notify the parties of its intent to dismiss is cured when, as here, the appellant timely files a motion to reinstate."); *In re Estate of Perez-Muzza*, No. 04-12-00178-CV, 2013 WL 979128, at *2 (Tex. App.—San Antonio Mar. 13, 2013, no pet.) (mem. op.) (same); *Aguilar v. 21st Century Res., Inc.*, 349 S.W.3d 32, 35 (Tex. App.—El Paso 2010, no pet.) (same); *see also Harris, N.A. v. Obregon*, No. 05-10-01349-CV, 2013 WL 3524153, at *5 (Tex. App.—Dallas July 11, 2013, no pet.) ("Harris ultimately received notice and an opportunity to be heard in connection with its motion to reinstate; therefore, Harris was not harmed by the lack of notice and a hearing on the motion to dismiss."); Tex. R. App. P. 44.1 ("No judgment may be reversed on appeal on the ground that the trial court made an error of law unless the court of appeals concludes that the error complained of . . . probably caused the rendition of an improper judgment.").[5]

---

[5] As discussed above, the essential argument in Brown's Amended Motion for Joinder is that he was denied due process by the Freeds' failure to make him a party to the case. In his Appellant's Brief, however, he argues that he was denied due process by the failure to give him notice of the Freeds' motion for entry of judgment and the signing of the judgment. These arguments appear to raise two distinct due-process violations. The assertion of one particular due-process violation cannot preserve a complaint about a different violation merely because they both involve the issue of due process. And, of course, a complaint raised on appeal that does not comport with the complaint or objection made in the trial court is waived. *See Patriot Contracting, LLC v. Shelter Prods., Inc.*, 650 S.W.3d 627, 650 (Tex. App.—Houston [1st Dist.] 2021, pet.

**CONCLUSION**

We dismiss for want of jurisdiction Brown's attempted appeal from the portion of the trial court's judgment resolving the merits of the Freeds' suit against the Greenbergs. We affirm that portion of the trial court's judgment denying Brown's "Amended Motion for Joinder of Persons Needed for Just Adjudication and New Trial."

_____

J. Woodfin Jones, Justice

Before Justices Baker, Theofanis, Jones[*]

Affirmed in Part; Dismissed in Part on Motion for Rehearing

Filed: December 29, 2023

[*]Before J. Woodfin Jones, Chief Justice (Retired), Third Court of Appeals, sitting by assignment. *See* Tex. Gov't Code § 74.003(b).

---

denied) ("To preserve error for our review, an appellant's complaint on appeal must comport with [its] object[ion] in the trial court.") (quoting *Benson v. Chalk*, 536 S.W.3d 886, 895–96 (Tex. App.—Houston [1st Dist.] 2017, pet. denied); *see also* Tex. R. App. P. 33.1. Moreover, constitutional errors are not immune from waiver. *See In re J.B.*, 605 S.W.3d 650, 653 (Tex. App.—Houston [1st Dist.] 2020, no pet.) ("Even constitutional errors can be waived if a party fails properly to object to the errors at trial."); *Carrizales v. Texas Dep't of Protective & Regul. Servs.*, 5 S.W.3d 922, 925 (Tex. App.—Austin 1999, pet. denied) ("As a rule, a party may not raise an issue, even a constitutional claim, for the first time on appeal. A constitutional challenge not raised properly in the district court is waived on appeal." (citation omitted)). Nonetheless, we assume without deciding that Brown preserved his due-process complaint for appeal.